UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                           CRIMINAL ACTION NO. 3:19-CR-117-JRW-1

TREY ANDERSON                                                     DEFENDANT

### ORDER AND OPINION DENYING TREY ANDERSON'S MOTION TO SUPPRESS

In February 2019, a reliable source informed local police that Trey Anderson was trafficking large amounts of methamphetamine. Over the next six weeks, the police surveilled Anderson's home, cars, and stash house. In addition, they arranged for four controlled buys with Anderson. During this period, state courts issued two search warrants for the installation of GPS tracking devices on Anderson's cars, and a state court authorized a pole camera near Anderson's stash house. Anderson usually visited the stash house 10 to 15 times a day, and he often returned to his home after a day of apparent trafficking. The police cooperated with a DEA investigation that had begun before the local police's and that included large controlled buys with Anderson. In April, an affidavit reported these facts and requested a search warrant for Anderson's residence.

Upon the execution of this search warrant and a search warrant for the stash house, law enforcement recovered guns, drugs, and cash. Anderson attempted to flee from the stash house but was apprehended. He now moves to suppress two guns and money found at his home and to suppress a statement he made to the police at the stash house shortly after his arrest.

\*   \*   \*

A court must ensure that the judge who issued the search warrant for Anderson's home had a substantial basis for concluding that the affidavit supporting it established probable cause. There must be a "nexus" between the evidence sought and the place searched. *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018) (Bush, J.); *cf.* Mike Lee, *Our Lost Constitution* 103-120 (2015) ("general warrants . . . are incompatible with liberty" and "under the Fourth Amendment, they are unconstitutional"). A reviewing court asks whether there was "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006). In doing so, a court is bound by the four corners of the affidavit. *Id.* (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

In this case, the warrant authorizing the search of Anderson's home was based on an affidavit that provided overwhelming evidence that Anderson spent a great deal of his time dealing drugs. Nonetheless, he argues that when it comes to a search of a home, such evidence is not enough because it does not establish a nexus between the evidence sought and the place to be searched. It is, however, more than enough.

To be sure, in our circuit, "it cannot be inferred that drugs will be found in the defendant's home – even if the defendant is a known drug dealer." *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016). But that is true only when the defendant is not, for lack of a better term, a full-time drug dealer. "Evidence of a defendant's ongoing course of unlawful conduct may make it reasonable to conclude that he keeps evidence of his illegal scheme in his home. Indeed, our cases have long established that 'probable cause generally exists to search for the fruits and

instrumentalities of criminal activity at the residence of a drug dealer with continual and ongoing operations.'" *McCoy*, 905 F.3d at 417.[1]

Full-time drug dealers obviously do not run their illegal operations from corporate headquarters registered with the Secretary of State. They use their cars, their stash houses, and their homes. And even if a dealer keeps his drugs at a stash house, there's a better than decent chance he keeps his gun where it can best protect him (his home) and his illicit revenues where he can best protect them (also his home). That's why there exists, for a full-time drug dealer, "a nexus between a defendant's residence and illegal drug activity with no facts indicating that the defendant was dealing drugs from his residence." *Id.* at 418. When it is "reasonable to conclude that [a defendant] was engaged in ongoing drug trafficking," it is "reasonable to infer that evidence of illegal activity would be found at [his] residence." *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009).

Here, the police observed Anderson visiting a stash house 10 to 15 times a day, and officers conducted four controlled buys with him. That alone provided probable cause to search his home.[2] Add to that evidence that for six weeks police observed him using his car to traffic drugs and then

---

[1] Quoting *United States v. Newton,* 389 F.3d 631, 636 (6th Cir. 2004), *vacated on other grounds,* 546 U.S. 803 (2005); citing *United States v. Bethal,* 245 F. App'x 460, 467 (6th Cir. 2007) (evidence that a defendant "is a drug dealer with 'continual and ongoing operations' in and of itself creates probable cause to search his home").

[2] *Leon*'s good-faith exception also requires the denial of Anderson's motion to suppress. *United States v. Leon*, 468 U.S. 897 (1984). The agents' reliance on the search warrant was reasonable. And Anderson's counsel has been unable to identify any decision to suppress evidence seized from a warranted search of a defendant's home when the warrant's affidavit established probable cause the defendant had sold drugs. At the suppression hearing, the one case he did cite in support of his motion actually denied the defendant's suppression motion – and it did so under *Leon*. *Cf. Frazier*, 423 F.3d at 533.

3

tracked his car back to his home, and the nexus between Anderson's drug trafficking and his home looks all the more gilded.³

\* \* \*

Anderson also claims he did not "voluntarily, knowingly, and intelligently" waive his right to remain silent before he told DEA agents (1) that he and an associate were the only ones involved with the drugs found at the residence, (2) that his source was one of the city's biggest suppliers, and (3) that he would provide the supplier's name in exchange for immunity – a deal the agents immediately rejected. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966).

Before Anderson made these statements, an agent read Anderson his *Miranda* rights, verbatim, from a DEA-13 card. When the agent asked if Anderson understood them, Anderson said yes. And when the agent asked if Anderson would speak to him and another agent without an attorney, Anderson again said yes. It's true that at Anderson's suppression hearing the agents could not, seven months later, remember if Anderson said, "I do," or "Yes," or nodded, or indicated consent in one of countless other understandable ways. But that doesn't matter. Nor does it matter that Anderson's consent was neither written nor tape recorded. Both officers testified. Both officers were credible. Their recollections are unrefuted. And the steps they took to protect Anderson's Fifth Amendment right were beyond sufficient.

Moreover, within minutes of waiving his *Miranda* rights, Anderson invoked them. He did so by refusing to answer further questions, and requesting an attorney, when the agents refused his proposed deal for more information in exchange for immunity. It makes little sense to suggest that

---

³ *Cf.* William Shakespeare, *King John* (1595) ("To guard a title that was rich before, / To gild refined gold, / To paint the lily, / To throw a perfume on the violet, / To smooth the ice, or add another hue / Unto the rainbow, or with taper-light / To seek the beauteous eye of heaven to garnish, / Is wasteful and ridiculous excess.").

4

Anderson did not understand the very right he quickly and successfully invoked as soon as his proposed deal didn't happen. Rather, Anderson's waiver of his rights was "the product of a free and deliberate choice" and was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

\* \* \*

Because it is reasonable to search the home of a full-time drug dealer, the Court **DENIES** Trey Anderson's motion to suppress the guns and money seized from his home. And because law enforcement does not need to tape record interrogations or obtain written waivers of suspects' *Miranda* rights, the Court also **DENIES** Anderson's motion to suppress his confession.[4]

cc: Counsel

Justin R Walker, District Judge
United States District Court

January 15, 2020

---

[4] JRW & Leah Spears.